.ALFRED S. PERKINS *versus* RUFUS HITCHCOCK.

The assignees in an assignment under our statute, having received the property of the debtor into their possession, are liable for it; to the debtor, if the assignment is invalid, and to the creditors becoming parties thereto, if it is valid.

Being liable, each for the other, either may secure the other against such liability in any mode not repugnant to law.

Where one assignee, having collected money for the estate, in compliance with a previous agreement with his co-assignee conveys property to a third person, upon the condition that the latter shall pay the co-assignee the sum collected, and such person afterwards promises the co-assignee to pay it to him, such promise is founded upon a sufficient consideration, and is not within the statute of frauds.

And such conveyance is valid, although the vendor subsequently thereto, and before the vendee makes the promise to the co-assignee, himself makes an assignment.

Perkins *v.* Hitchcock.

And the co-assignee may maintain an action on such promise, without procuring a discharge of the other assignee from liability under the assignment.

Nor will the fact that the defendant is surety upon the bond of the plaintiff as assignee, and remains liable thereon, be any defence to such an action.

A party is not injured by a refusal to give requested instructions based upon alleged facts, which the jury find are not proved.

When one party to a suit testifies to alleged facts equally within the knowledge of the other party, and the latter does not offer himself as a witness, and no reason is given why he is not called, the jury may take the failure to testify into consideration in determining what credit they ought to give to the party who has testified.

On Exceptions to the rulings of Kent, J., presiding.

Assumpsit to recover the sum of $928, put into the hands of the defendant by one Hall, to be paid to the plaintiff.

The evidence of the plaintiff tended to show that he and one Hall were the assignees, in an assignment, under the statute, of Elmes & Tebbetts; that Hall, or the firm of which he was a member, collected the sum of $928, of the assets of Elmes & Tebbetts, and, in order to secure the plaintiff for his liability for this sum, Hall, or his firm, in compliance with a previous agreement with the plaintiff, put certain property into the hands of the defendant for the purpose of paying this sum to the plaintiff; and that the defendant afterwards promised the plaintiff to pay him this sum; that Hall also became insolvent and made an assignment, but that this property was put into hands of the defendant before Hall's assignment was made.

The defendant's evidence contradicted in some points that of the plaintiff, and tended to show that the assignment of Elmes & Tebbetts was not valid in law; that the property was put into the hands of the defendant to secure him for liabilities he had incurred; and that any interest Hall had in it passed to *his* assignees before the defendant made the promise relied on.

It appeared, also, that the defendant was surety upon the bond of the plaintiff, as assignee, and that the plaintiff, at the time of the trial, had not paid over to the creditors the whole amount which had come into the hands of the as-

signees, and been ordered by the Judge of Probate to be paid to the creditors.

The counsel for defendant contended that the action could not be maintained, and requested the presiding Judge to instruct the jury that, if the defendant, supposing that property sufficient to pay said sum had been placed in his hands by Hall, made said promise, which property proved entirely insufficient therefor, he is not bound thereby; that, if the plaintiff and Hall were joint assignees of Elmes & Tebbetts, and that Hall, as one of said assignees, had received from the assets of said firm the said sum of $928, which sum he had placed in the hands of defendant to be paid to plaintiff as assignee aforesaid, and said defendant promised plaintiff then to pay him, the defendant would not be legally bound to pay it unless Hall was discharged from his liability to the creditors of Elmes & Tebbetts for that amount; that, unless Hall was released from his liability as assignee, the agreement of defendant to pay, (if made,) is without consideration and void; that, if Hall, Snow & Co. made an assignment of their property before the plaintiff assented to the placing of the property in the hands of the defendant, such property would pass by said assignment, and the defendant would not be liable on his promise to pay plaintiff, if such promise was made.

All of which were refused, except as given in the general instructions, which were as follows:—

That, if the jury were satisfied that Hall, one of the assignees, or the firm of which he was a member, had in his or their hands $928, collected for, and belonging to the assignees of Elmes & Tebbetts, and that he or the firm did put into the defendant's hands property sufficient to secure the payment of this sum, and with the condition that he, Hitchcock, was to pay it to the plaintiff, the other assignee, and the defendant assented to this, and received the property for that purpose, and if, afterwards, he promised the plaintiff, to pay him that amount, and did, at the time of the promise and as a part of it, request plaintiff to wait for a

short time for payment, which was assented to by plaintiff, and he did wait, that this would be a binding contract on sufficient consideration; that, if Hall told plaintiff that he would put property into defendant's hands to pay plaintiff this debt, and plaintiff assented to the proposition before the assignment of Hall, Snow & Co., and, if the property was put into his hands accordingly, before the assignment, and defendant agreed at the time of taking it to pay this debt to plaintiff, and afterwards promised plaintiff to pay, as before stated, which plaintiff assented to, that defendant could not avoid his liability on the ground that the property would pass to the assignees of Hall, Snow & Co., notwithstanding the transfer to defendant, it not appearing that the assignees had ever made an inventory of, or any claim for the property.

The defendant's counsel also requested the presiding Judge to instruct the jury, that this action cannot be maintained as long as the defendant remains liable on the bond for the acts or omissions of the plaintiff, as assignee of Elmes & Tebbetts.

This request was acceded to and the instruction given with the following qualifications :—"If the transfer to defendant was only to secure him on the bond to the Judge of Probate, but if it was, that he was to pay it over to plaintiff, and he promised, as before stated, it could be, so far as this point was concerned."

The defendant did not offer himself as a witness, and there was no evidence offered where he was, or of any reason why he was not called as a witness. The fact that he did not testify in the case was commented upon by the counsel for the plaintiff, in his argument to the jury; and the presiding Judge, in his charge to the jury, remarked upon this, and charged them, that it was the privilege of parties to testify in their cases, and it was optional with them to do so; and the fact that the defendant had not testified in this case might properly be considered by them.

The verdict was for the plaintiff, and the defendant ex-

cepted. He also filed a motion to set aside the verdict as being against evidence, but no question of law was raised in discussing it.

*F. D. Sewall,* for defendant.

1. The promise, if made, was a conditional one, to pay the plaintiff if there was any property left after the defendant's liabilities were paid.

2. There was no consideration for the promise, unless Hall was released from his liability as assignee. If Hall still continues liable, he is in no better condition, than if this sum should not be paid:

If this amount had been paid to the plaintiff and he had failed to pay it to the creditors, Hall would still be equally liable.

3. The property in defendant's hands passed to the assignees of Hall, inasmuch as the evidence shows that the defendant made no promise to the plaintiff, until *after* that assignment.

4. The remarks of the Judge in relation to the defendant's not testifying tended to mislead the jury. The plaintiff could have called him, but the jury must have understood that the defendant could not be compelled to testify.

*Gilbert,* for plaintiff.

1. There was privity between plaintiff and defendant. *Arnold* v. *Lyman,* 17 Mass., 400; *Hall* v. *Marston,* 17 Mass., 505; *Dearborn* v. *Parks,* 5 Maine, 81, and cases cited.

2. The consideration was sufficient and the promise is not within the statute of frauds. *Dearborn* v. *Parks,* cited above; *Brown* v. *Atwood,* 7 Maine, 356; *Hilton* v. *Dinsmore,* 21 Maine, 410; *Todd* v. *Tobey,* 29 Maine, 219; *Maxwell* v. *Haynes,* 4 Maine, 559.

3. The first requested instruction was substantially given.

4. The plaintiff assented to placing the property in the hands of the defendant, before Hall made his assignment.

The opinion of the Court was drawn up by

May, J. — That the plaintiff, and one Willard Hall, became the assignees of Elmes & Tebbets, under an assignment made for the benefit of their creditors, June 3, 1857, is not denied. They also received the assets of said firm, and gave their joint bond with sureties to the Judge of Probate as the statute requires. It is now contended that said assignment was invalid, because the evidence in this case does not show a subsequent compliance with the provisions of the statute in relation thereto, passed March 21, 1844, c. 122, § 3, and that, the assignment being void, the plaintiff cannot maintain this action upon the promise alleged in his writ. How the invalidity of the assignment, and the proceedings under the same, can possibly invalidate such promise, if otherwise binding, we fail to perceive. The plaintiff and Hall having received the property upon which the assignment was intended to act, they became jointly liable in some mode and to somebody therefor; and equally so whether the assignment should prove to be valid or invalid. If invalid, their joint liability for the assets received would be to Elmes & Tebbetts, and, if valid, to such of their creditors as became parties thereto. The plaintiff and Hall being therefore liable, each for the other, in any event, it was lawful for either to secure the other against such liability, in any mode not in conflict with the principles and requirements of the law.

In this case the jury must have found that Hall, having received a certain amount of money from the assets of Elmes & Tebbetts, and the same being held by him or by the firm of Hall, Snow & Co., of which he was a member, he being insolvent, undertook to secure the plaintiff against loss on account of the same; and that, for this purpose, he, and the firm of Hall, Snow & Co., put into the hands of the defendant property *sufficient* to secure the plaintiff against such loss, with the condition that the defendant was to pay the amount which Hall had received, to the plaintiff, that he might thereby be secured against his joint liability with

Hall therefor; and, further, that the defendant afterwards promised the plaintiff to pay him that amount. The presiding Judge instructed the jury that, if they were satisfied of these facts, and that the defendant, at the time of the promise and as a part of it, requested the plaintiff to wait a short time for payment, and he assented thereto, and did wait, this would be a binding contract on sufficient consideration; and further, that, if Hall told the plaintiff that he would put property into defendant's hands, and the plaintiff assented to the proposition, *before* the assignment of Hall, Snow & Co., and the property was put into his hands accordingly, *before* the assignment, and Hitchcock agreed, at the time of taking it, to pay this debt to the plaintiff, and afterwards promised to pay the plaintiff, as before stated, which the plaintiff assented to, the defendant could not avoid his liability on the ground that the property would pass to the assignees of Hall, Snow & Co., notwithstanding the transfer to the defendant, it not appearing that the assignees had ever made an inventory of, or any claim for the property.

These instructions are sufficiently favorable to the defendant, when considered in the light of the facts alone upon which they are based, and which are referred to therein. The law is now well settled "that where money has been paid by one person to a second, for the benefit of a third, the latter may maintain an action against the second for the money." *Bohanan* v. *Pope & al.*, 42 Maine, 93, and cases there cited. It is also said in the same case that "where a party for a valuable consideration stipulates with another, by simple contract, to pay money or do some other act for the benefit of a third person, the latter, for whose benefit the promise is made, if there be no other objection to his recovery than a want of privity between the parties, may maintain an action for a breach of such engagement," and several cases are there cited from both this State and Massachusetts which sustain the proposition. So, too, the cases cited by the plaintiff clearly show that when one person sells

property to another, and the purchaser agrees to pay certain bills of the vendor to third persons, as part of the consideration, and afterwards promises such third persons to pay the same, he makes himself thereby liable, and his promise is not within the statute of frauds. *Maxwell & al.* v. *Haynes & al.*, 41 Maine, 559. The consideration is sufficient, though moving from a third person. The instructions are in harmony with these principles, and were properly given, unless the case discloses other facts than those referred to by the presiding Judge, as the legal basis thereof.

The question then arises whether the case discloses any facts which called for different instructions, or which would warrant those which were called for by the counsel in defence. The first requested instruction appears to be contained, so far as it could properly have been given, in the instructions which were given. The second and third requested instructions, which were based upon the idea that Hall was to be discharged from his liability, before the plaintiff would have the right to recover the money as security for the payment thereof, and that the defendant's promise would be without consideration without such discharge, are manifestly erroneous. There are no facts in the case tending to show that such was the intention of any of the parties connected with the transaction. It is much more reasonable to suppose that the parties intended that the money should be paid for the very purpose of enabling the plaintiff to discharge such liability.

But the presiding Judge was further requested to instruct the jury that, if Hall, Snow & Co. made an assignment of their property *before* the plaintiff assented to the placing of the property in the hands of the defendant, such property would pass by said assignment, and the defendant would not be liable on his promise, if such promise was made. The case shows that the assignment of Hall, Snow & Co. was made April 14, 1858, and that the conveyance to the defendant, which consisted partly of their partnership property, and partly of the individual property of Hall, was made

on the day preceding the assignment, and there was testimony tending to show that the plaintiff consented to such conveyance for his security, before it was made. There is no evidence in the case, that either the plaintiff or defendant then knew that Hall, Snow & Co., or that Hall himself was then contemplating an assignment of their property for the benefit of their creditors. So far as the case shows, they acted in good faith, for the sole purpose of obtaining security for their liabilities. Nor does it appear that the assignees of Hall, Snow & Co., or of either of them, have in any way made claim to the property conveyed to the defendant. It does not appear that the plaintiff had any knowledge of the conveyance to the defendant, at the precise time when it was made; but, in view of the previous arrangement between him and Hall, as testified to by him, and the fact that it was for his benefit, the jury might well find that he assented to it as soon as it was made; and the fact that the jury were instructed that, if Hall told the plaintiff that he would put property into the hands of the defendant to pay the plaintiff this debt, and *the plaintiff assented to this proposition before the assignment of Hall, Snow & Co.*, and the property was put into his hands accordingly, before the assignment, and Hitchcock agreed, at the time of taking it, to pay this debt to the plaintiff, and afterwards promised the plaintiff to pay it, to which he assented, the defendant could not avoid his liability on the ground that the property would pass to the assignees of Hall, Snow & Co. notwithstanding the conveyance, sufficiently shows that the jury must have found that the plaintiff assented to the placing of the property in the hands of the defendant prior to said assignment, and such fact being found, the basis of this last requested instruction wholly fails, and the defendant cannot have been injured by its being withheld. No question appears to have been raised at the trial, that this conveyance to the defendant was a fraud upon the law, or upon creditors, and no such question is now open to the defendant upon these exceptions.

The requested instruction, that this action cannot be maintained as long as the defendant remains liable upon the bond for the acts or omissions of the plaintiff, as assignee of Elmes & Tebbetts, might properly have been withheld.  It is not perceived how his liability upon such bond, in the absence of all proof of any agreement to that effect, could justify the defendant in refusing to perform the binding contract or promise he had made.   That the defendant's request was in fact complied with, subject to the qualification stated by the presiding Judge, affords no ground of complaint.

It further appears that the defendant did not offer himself as a witness, and no evidence was offered to show where he was, nor any reason given why he was not called; which fact was commented upon by the counsel for the plaintiff in his argument to the jury, and, so far as appears, without objection.   The presiding Judge, in his charge, remarked to the jury, that it was the privilege of parties to testify in their cases, and it was optional with them to do so ; but the fact that the defendant had not testified in the case might properly be considered by them.   Objection is now made to this remark, the same having been excepted to at the trial.

It is true that jurors are sworn to decide civil cases according to the evidence given them ; but they are at liberty to consider the circumstances under which it is given.   The weight which they are to give to testimony often depends very much upon the intelligence and appearance, or feeling, manifested by the witness.   Often, too, the degree of credit which shall be given to a witness who undertakes to state the contents of some paper which the defendant is shown to have in his possession, and, upon notice, has refused to produce, will be much affected by its non-production.   In view of such fact, the jury may well conclude, that if the witness has not stated truly, the defendant would produce the paper to contradict him.   To permit jurors to draw such inferences as they might deem proper from circumstances of this kind, has almost, if not universally, been held as allowable by the law ; and no reason is apparent, where, in a case like

the present, it appears that one party has testified to facts equally within the knowledge of the other, and the other party does not choose to contradict what has been testified to prejudicial to his case, why the circumstance of his absence or neglect to testify differently, unexplained, may not be considered by the jury in determining what credit they ought to give to the party who has testified; or, in other words, why they may not consider the testimony before them in the light of the circumstance that it is uncontradicted by the other party, who knows whether it is true or false, and who, if it is false, is legally admissible to contradict it. Where a witness testifies to facts as having occurred in the presence of other witnesses, or where a witness is attempted to be impeached by showing his general character for truth to be bad, and the party who is to be affected in such case, have had full opportunity to call in the other witnesses who were present when the alleged facts occurred, in the one case, or the friends and neighbors who know the general character of the witness for truth, in the other case, may not the jury consider the evidence in the light of the fact that it is uncontradicted, when it might be easily contradicted by the other party, if it were not true in fact? We think the remarks of the Judge, which were excepted to in this particular, were legally unexceptionable.

In regard to the motion to set aside the verdict, as against the weight of evidence, we see no such preponderance in favor of the defendant as satisfies us that the jury have acted under any gross mistake, or under any passion, bias, or prejudice; and the result is that both the exceptions and motion must be overruled.

*Exceptions and motion overruled,*
*and judgment on the verdict.*

TENNEY, C. J., RICE, CUTTING and GOODENOW, JJ., concurred.

DAVIS, J., concurred in the result.